Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-09-00425-CV

Susie **AGUILERA**,
Appellant

v.

Santiago **NAVA**,
Appellee

From the 293rd Judicial District Court, Maverick County, Texas
Trial Court No. 06-09-21974-MCV
The Honorable Cynthia L. Muniz, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  July 21, 2010

AFFIRMED.

In five issues, Susie Aguilera appeals from a take-nothing judgment against her on her 42

U.S.C. § 1983 claim for excessive force. *See* 42 U.S.C. § 1983 (2000). We affirm the trial court's

judgment.

### BACKGROUND

On July 29, 2006, sixteen-year old Susie Aguilera and some friends attended a party at a

house in Eagle Pass, Texas. During the party, one of Aguilera's friends, Palmira Rodriguez, got

into an altercation with the host of the party, Andres Alvarado, over what music was being played. Aguilera and Rodriguez then left the house in a car that Aguilera was driving. Aguilera had been drinking alcoholic beverages while at the party. As the girls attempted to drive away, Maverick County sheriff's deputy Jessica DeLuna arrived on the scene. Alvarado told DeLuna that Aguilera and Rodriguez had been causing problems, and he pointed out the two girls in their vehicle. DeLuna saw the vehicle strike a parked car as the girls attempted to drive away. DeLuna approached the vehicle on foot and banged her flashlight on the trunk, ordering Aguilera to stop. Aguilera continued to drive away. Shortly thereafter, DeLuna pulled Aguilera's car over with her patrol car.

DeLuna testified at trial that as she approached the car, Aguilera kicked the door open and began trying to kick and punch DeLuna. As DeLuna attempted to restrain her, Aguilera swore at her and continued to be hostile and aggressive. Aguilera and Rodriguez both claimed, and DeLuna denied, that while attempting to restrain Aguilera, DeLuna banged Aguilera's head against the trunk of the vehicle several times. Officer Santiago Nava and Maria Cruz, an officer in training, then arrived as back up. Nava assisted DeLuna in handcuffing and restraining Aguilera. DeLuna told Nava to take Aguilera to his patrol car while she turned her attention to Rodriguez.

Nava testified that as he walked Aguilera to his patrol car, Aguilera, who was handcuffed, continued to be hostile and aggressive, attempting to kick him in the groin as they walked. No one at the scene saw what transpired next, and Aguilera testified at trial that she did not remember what happened on the way to Nava's patrol car. DeLuna testified that when she turned her attention back to Nava and Aguilera, she saw Aguilera on the ground but did not see how she got there. DeLuna, Cruz, and Rodriguez all testified that they saw Aguilera's face

covered in blood when she was put in Nava's patrol car, but they did not see what caused her bloody face. Nava told DeLuna that Aguilera tripped and fell while handcuffed as they were walking to his patrol car. DeLuna called for an ambulance, and Aguilera was then taken to the hospital.

At the hospital it was determined that Aguilera suffered a fracture to her nasal bone and multiple lacerations and bruising to her face. She also was later treated for post traumatic stress disorder.

Because of the nature of the incident and Aguilera's resulting injuries, Maverick County Sheriff Tom Herrera brought in the Texas Rangers to investigate. Ranger Tony DeLuna (not related to Jessica DeLuna) was assigned to the case, and in the process he conducted several interviews with the officers involved. In Nava's first interview with Ranger DeLuna, he stuck with his original story that Aguilera fell, causing her injuries. In a second interview, he admitted that he actually tripped Aguilera by sweeping her legs out from under her while she was handcuffed, causing her to hit the ground face first and resulting in her injuries. Nava claimed that this "take-down" maneuver was necessary to defend himself against Aguilera, who tried to kick him in the groin and who continued to be hostile and aggressive toward him, even while handcuffed.

Aguilera filed suit against Maverick County, Jessica DeLuna, Santiago Nava, and several other law enforcement officers under 42 U.S.C. § 1983 for injuries caused by excessive force during her arrest. All defendants filed motions for summary judgment based on federal and state law immunity, which the trial court denied. This court affirmed the denial of summary judgment. *DeLuna v. Aguilera*, No. 04-08-00009-CV, 2008 WL 2037424, at *5 (Tex. App.—San Antonio May 14, 2008, no pet.) (mem. op.). Maverick County then filed a no-evidence motion for

summary judgment, which was granted. Aguilera subsequently non-suited several of the officers who participated in her arrest. The case proceeded to trial against Santiago Nava and Jessica DeLuna. After the close of evidence, the trial court granted DeLuna's motion for directed verdict, and then submitted the case to the jury as to Nava.

The jury answered three questions as to Nava's liability for use of excessive force under § 1983:

> **Question No. 1**:     Do you find . . . that the Plaintiff, Susie Aguilera, suffered harm?

> **Question No. 2**:     Do you find . . . that the harm suffered by the Plaintiff . . . was caused directly and only from Defendant Santiago Nava's use of force that was clearly excessive to the need?

> **Question No. 3**:     Do you find . . . the Defendant Santiago Nava's use of excessive force was objectively unreasonable in light of the facts and circumstances at the time?

The jury answered Question No. 1 and Question No. 2 in the affirmative, and it answered Question No. 3 in the negative. The trial court entered a take-nothing judgment against Aguilera, and this appeal ensued.

## DISCUSSION

Aguilera presents five issues on appeal. We will address each of them in turn.

### A.   *Factual Sufficiency*

In her first issue, Aguilera challenges the factual sufficiency of the evidence, arguing that the jury's verdict is against the great weight and preponderance of the evidence. When a party attacks the factual sufficiency of an adverse finding on an issue on which she had the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing a factual sufficiency challenge, we consider and weigh all of the evidence in support of and contrary to the judgment, and will set aside a judgment only if it is so contrary to the

overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Bay, Inc. v. Ramos*, 139 S.W.3d 322, 329 (Tex. App.—San Antonio 2004, pet. denied).

Aguilera argues that the jury's finding that the force employed by Nava against Aguilera was not objectively unreasonable under the circumstances is contrary to the great weight and preponderance of the evidence. We disagree. At trial, Nava testified that Aguilera's behavior during her arrest was so hostile and aggressive that it took three people (himself, DeLuna, and Cruz) just to restrain and handcuff her. He also testified that she was kicking and headbutting him, and attempted to kick him in the groin as he walked her to his patrol car. Additionally, Nava testified that despite the vast size difference between himself and Aguilera, it was his experience that smaller people can still cause great harm to police officers when resisting arrest. Nava explained that he felt the need to perform a protective "take-down" on Aguilera in order to stop her resistance and to protect himself.

The jury also heard testimony from Margo Fraiser, an expert in criminal justice. Fraiser opined that given Aguilera's attempt to kick Nava, his actions in performing a take-down maneuver on her were reasonable under the circumstances. She testified that it was her belief that a reasonable and prudent officer would have taken those steps to defend himself in a similar situation.

Aguilera presented testimony from Ranger DeLuna regarding the investigation of Nava's actions. DeLuna testified that he had suspected that Nava was not telling the truth about how Aguilera was injured when he looked at the photographs of her injuries. He explained that he felt the manner of her injuries were not consistent with simply falling down, so he pressed Nava for the truth in his second interview with him. After Nava admitted that he actually tripped Aguilera

himself, DeLuna took his statement. DeLuna testified that in Nava's initial statement, he characterized his actions as "slamm[ing]" Aguilera to the ground, rather than performing a "take-down" maneuver. The court did not, however, allow testimony from DeLuna as to his opinion of whether Nava's actions constituted excessive and unreasonable force.

Additionally, Aguilera presented several exhibits depicting her injuries, showing her face swollen and bruised. She also elicited testimony from Nava on cross-examination as to the vast size difference between himself and Aguilera, though Nava insisted that a smaller person can still harm a police officer, regardless of the size difference.

The jury is free to accept or reject all or part of the testimony of any witness, and we defer to such determinations as to the credibility and weight of the evidence that are supported by the record. *See Nordstrom v. Nordstrom*, 165 S.W.2d 575, 580-81 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). At trial, there was testimony from Nava and Fraiser that Nava's actions were necessary and objectively reasonable under the circumstances. The jury's finding that the force employed by Nava was not objectively unreasonable under the circumstances is not against the great weight and preponderance of the evidence. We overrule Aguilera's first issue.

**B.      *Immateriality of Jury Answer***

In her second and third issues, Aguilera contends that the jury's affirmative answer to Question No. 2 rendered Question No. 3 immaterial; therefore, the trial court erred both in failing to disregard the answer to Question No. 3 and in failing to grant a judgment notwithstanding the verdict in her favor. Aguilera argues that liability was conclusively established by the jury's affirmative answer to Question No. 2.

A trial court may disregard a jury finding only if it is unsupported by evidence or if the issue is immaterial. TEX. R. CIV. P. 301; *Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d

154, 157 (Tex.1994). A question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings. *Spencer*, 876 S.W.2d at 157. A jury answer is considered immaterial if it will not alter the effect of the verdict. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995); *Cortez v. HCCI-San Antonio, Inc.*, 131 S.W.3d 113, 123 (Tex. App.—San Antonio 2004), *aff'd*, 159 S.W.3d 87 (Tex. 2005). A trial court may disregard the jury's finding on an immaterial issue and render judgment based upon the remaining findings. *Dobbins v. Redden*, 759 S.W.2d 477, 479 (Tex. App.—San Antonio 1988), *aff'd as modified*, 785 S.W.2d 377 (Tex. 1990).

In order to prevail on a claim of excessive force under 42 U.S.C. § 1983, a plaintiff must show "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996); *City of San Antonio v. Dunn*, 796 S.W.2d 258, 263 (Tex. App.—San Antonio 1990, writ denied). The jury charge tracked this law exactly, with each question corresponding to a prong of the test articulated by the Fifth Circuit. Each prong is a necessary element of an excessive force claim. *See Ikerd*, 101 F.3d at 433-34. An affirmative answer to Question Nos. 1 and 2 alone would be insufficient to establish liability. Because an affirmative answer was required to all three questions for Aguilera's burden to be satisfied, the jury's answer to Question No. 3 was not immaterial. *See Spencer*, 876 S.W.2d at 157. The jury's negative answer to Question No. 3 did alter the verdict because it precluded Aguilera from recovering any damages. *See id.* In addition, as discussed above, there is sufficient evidence in the record to support the jury's finding that Nava's force was not objectively unreasonable under the circumstances. The trial court did not err in failing to disregard the jury's answer to Question

No. 3, nor did it err in failing to grant a judgment notwithstanding the verdict. We overrule Aguilera's second and third issues.

## C.     *Irreconcilable Conflict in Jury Answers*

In her fourth issue, Aguilera contends the trial court erred in denying her motion for new trial because the jury's affirmative answer to Question No. 2 and its negative answer to Question No. 3 create an irreconcilable conflict. The crux of Aguilera's argument is that because the jury found that the force employed by Nava was excessive, it could not have found that the force was also reasonable.

This court has held that to preserve a complaint for appeal regarding a conflict in jury answers, an objection must be raised before the jury is discharged. *See Medistar, Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 162 (Tex. App.—San Antonio 2008, pet. denied); *Torres v. Caterpillar, Inc.*, 928 S.W.2d 233, 244 (Tex. App.—San Antonio 1996, writ denied); *see also City of Port Isabel v. Shiba*, 976 S.W.2d 856, 860 (Tex. App.—Corpus Christi 1998, pet. denied) (holding the city waived claim that jury answers were in fatal conflict by failing to raise objection before jury was discharged); *Roling v. Alamo Group (USA), Inc.*, 840 S.W.2d 107, 109-10 (Tex. App.—Eastland 1992, writ denied) (holding objection to conflicting jury findings must be made before the jury is discharged  and raising the issue for the first time in motion for new trial does not preserve error). Here, the record does not reflect that Aguilera objected to a conflict in the jury answers before the discharge of the jury. Instead, she first raised the issue in her post-trial motion to disregard jury findings and motion for new trial. However, raising the issue of conflicting jury answers in a post-trial motion is insufficient to preserve the complaint. *See City of San Antonio v. Esparza*, No. 04-04-00631-CV, 2005 WL 3477826, at *2 (Tex. App.—San Antonio Dec. 21, 2005, no pet.) (mem. op.) (holding that when complaining of

irreconcilable conflict in jury answers, error cannot be preserved in a motion for new trial); *Oyster Creek Fin. Corp. v. Richwood Inv. II, Inc.*, 176 S.W.3d 307, 324 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (appellant's motion for new trial failed to preserve error on conflicting jury answers where he failed to object before the jury was discharged); *see also* TEX. R. CIV. P. 295. We therefore hold Aguilera has failed to preserve her fourth issue.

### D.    *Evidentiary Issue*

In her final issue, Aguilera contends that the trial court abused its discretion in allowing the introduction of evidence regarding her prior drug use. On cross-examination, opposing counsel elicited the following testimony from Aguilera regarding her answers to an intake questionnaire at the hospital where she received treatment after the incident:

> Q: When you . . . were in the hospital in Jourdanton, do you recall when they were treating you asking you whether you had ever used illicit drugs?
> A: Uh-huh.
> Q: What did you tell them?
> A: I said I didn't.
> Q: Did you give them a truthful answer?
> A: No.

Aguilera argues that the trial court erred in admitting this evidence of her prior drug usage, and its admission probably caused the rendition of an improper verdict. We disagree. After a conference with counsel outside the presence of the jury, the trial court specifically allowed the above quoted exchange to be admitted before the jury for the sole purpose of impeaching Aguilera's credibility. Without determining whether the impeachment was proper, we hold that it was nonetheless harmless. *See* TEX. R. EVID. 608. The testimony did not constitute any evidence that Aguilera had used drugs on the night of the incident, and raised only an inference of any prior drug usage. The testimony was some evidence that Aguilera had been untruthful on the hospital form, and thus tended to impeach her credibility. It is unlikely that Aguilera was harmed by the impeachment, however, because the jury's answers to the three issues submitted on

Nava's liability did not hinge on her credibility. Aguilera testified that she could not remember what happened to her when Nava walked her to his patrol car. Thus, Aguilera's credibility as a witness likely did not factor into the jury's determination of the objective reasonableness of Nava's actions at that time. *See* TEX. R. APP. P. 44.2(b). We therefore overrule Aguilera's final issue.

Based on the forgoing reasons, we affirm the trial court's judgment.


Phylis J. Speedlin, Justice