United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 27, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

06-60077
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

Versus

HERBERT RAY LEWIS, JR,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
3:05-CR-102-1

Before DAVIS, BARKSDALE and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

The Appellant, Herbert Ray Lewis ("Lewis"), appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Lewis argues that: (1) the district court erred when it denied his motion to suppress evidence; and (2) the district court abused its discretion in rejecting his Batson challenge. For the following

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

reasons, we AFFIRM the conviction.

I.

On the evening of May 25, 2005, at the Pilot Truck Stop in Flowood, Mississippi, Lewis was involved in an altercation with an unidentified individual. As Lewis was walking out of the truck stop store, the manager of the store heard Lewis ask an entering customer what he was looking at and tell him he would "pop a cap in his ass." The manager saw Lewis reach toward his back pocket where she saw what she concluded might be the handle of a gun. The manager called 911 and told the Flowood Police dispatcher that there was a black male wearing dirty khaki pants, with a red apron around his waist, and a flatbed tie-down strap around his neck that had made a threat and possibly had a gun.

Corporal Donell Reynolds received a call from dispatch that there was a black male subject, wearing a red apron, with a weapon at the rear fuel pumps of the Pilot Truck Stop. Reynolds and his partner, Aaron Messer, responded to the call within five minutes. Finding nothing suspicious at the rear pumps, the officers pulled to the front of the store where four black males were standing. One of the men walked away from the other three and the officers approached him to question him. The man said he overheard the manager make the 911 call and he thought the man with the tie-down strap around his neck (referring to Lewis) might be the man she was talking about.

Officer Reynolds returned to the group of three men and

-2-

asked which one had been in the argument in the back. Lewis responded that he had. Officer Reynolds asked Lewis to come with him to the back of Reynolds's patrol car and Lewis did so.

Reynolds asked Lewis if he had any weapons on him and Lewis said no. Reynolds then asked him what happened in the back and Lewis replied that he and another truck driver had "got into it over something." Officer Reynolds testified that: "After he got through explaining the best he could as to what happened in the back, I asked him again, I said, 'You don't have anything on you, do you?' And he looked at me and he said, 'I always have something on.'" Officer Reynolds interpreted this to mean that Lewis had a weapon. He ordered Lewis to his knees, called Officer Messer over to assist, and then handcuffed Lewis. Reynolds asked Lewis where the weapon was and Lewis replied in his left boot. The officers patted Lewis down and discovered a .45 caliber pistol with a round in the chamber in his left boot and a cartridge clip and two loose bullets in his right pocket. They also found a red apron in his rear pocket.

After discovering the gun, the officers ran Lewis's identification information and learned that he had an outstanding arrest warrant and a felony conviction. They then arrested Lewis. Lewis was indicted for public intoxication, carrying a concealed weapon, possession of a firearm by a convicted felon, and providing false identification information.

Lewis filed a motion to suppress the firearm and the

-3-

statements made to the officers.  Following a hearing, the district court denied the motion.

The district court ruled that Officer Reynolds had a reasonable articulable suspicion for questioning the group of men at the front of the Pilot Store.  Further, the district court noted that as a result of Lewis's answer to a question directed at the entire group, the questioning focused on him.  In this situation, the court explained, the questioning of Lewis was a Terry stop and thus it was not necessary to administer the Miranda warnings.  Finally, the district court concluded that after Lewis made the statement that he "always has something," the officer had a reasonable basis for concluding that Lewis was saying that he had a gun and thus the restraint and subsequent search were both proper.

During jury selection, Lewis objected to the government's peremptory challenges of African-Americans on the ground that the prosecutor was improperly striking jurors on the basis of race. The government exercised four of its six peremptory strikes and struck three African-Americans and one white.  The jury was ultimately comprised of four African-American and eight white jurors.

After the panel was selected, the court called on the prosecutor to explain his four challenges.  The defense asserts that the prosecution failed to articulate a race-neutral reason for two of the African-American jurors: Notrie Ann Lindsey and

Karyn Leason.

The prosecutor offered the following explanation for striking juror Notrie Ann Lindsey: "Kathy [the prosecutor's assistant] and I both just didn't feel comfortable with her, didn't think - our sense of her was that she couldn't pull the trigger when it came time to decide guilt or innocence."

Kathy Anderson, the prosecutor's assistant, explained her reaction to juror Karyn Leason:

> Her gestures. As a psychology major, her gestures, and she appeared that she wasn't interested in any of the conversations or any of the hearing, per se. She was not looking at anyone when they were asking questions when Mr. Bond and Mr. Jupiter got up. She wasn't paying attention. I just don't feel like she would give ....

Based on these explanations, the district court rejected Lewis's <u>Batson</u> challenge and found that the government had met its burden to show that its strikes were not racially motivated.

Following a jury trial, Lewis was convicted and lodged this timely appeal.

II.

A.

In reviewing a district court's denial of a motion to suppress, this court reviews findings of fact for clear error and conclusions of law <u>de novo</u>. <u>United States v. Hicks</u>, 389 F.3d 514, 526 (5th Cir. 2004). The denial of a motion to suppress will be upheld if there is any reasonable view of the evidence to support it. <u>United States v. Campbell</u>, 178 F.3d 345, 348 (5th

-5-

Cir. 1999).

The police are allowed to stop and briefly detain persons for investigative purposes if the police have a reasonable suspicion supported by articulate facts that criminal activity "may be afoot." Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85, 20 L. Ed. 2d 889 (1968). Where a police officer develops-and is able to articulate-reasonable grounds to believe that a suspect is armed and presently dangerous, he is permitted to conduct a carefully limited search of such persons to discover weapons that might be used to assault the officer. See United States v. Sanders, 994 F.2d 200, 203 (5th Cir. 1993). Prior to frisking the subject, the officer may restrain the subject to the extent necessary to protect the officer. Campbell, 178 F.3d at 348.

Lewis does not contest the validity of his initial questioning, but instead insists that the police exceeded the permissible scope of such a Terry stop by ordering him to his knees and handcuffing him before frisking him. Lewis claims that this conduct transformed the stop into a de facto arrest that was illegal because it was not supported by probable cause. Lewis concludes that because the officers did not have probable cause to execute an arrest, the district court erred in finding that the subsequent discovery of physical evidence was admissible.

We have observed that "using some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the

-6-

ground, and handcuffing a suspect-whether singly or in combination-do[es] not automatically convert an investigatory detention into an arrest requiring probable cause." Sanders, 994 F.2d at 206. In this case, given that Lewis had made a statement which reasonably led Officer Reynolds to believe that he was armed, it was not unreasonable to take the precaution of handcuffing Lewis and frisking him. See Campbell, 178 F.3d at 349 (citing Terry, 392 U.S. at 24 ("[a]n officer need not be certain that an individual is armed....")). Nor was it unreasonable to handcuff Lewis before frisking him. See Sanders, 994 F.2d at 208-09.

Once the officers found the weapon in Lewis's boot, they had probable cause to make the arrest. Before that time, the actions of the police officers were within the permissible bounds of an investigatory detention under Terry. The district court did not err in denying the motion to suppress.

### B.

We now turn to Lewis's argument that the prosecution's exercise of peremptory challenges against two African-American venire persons violated the principles of Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Specifically, Lewis points to the striking of two African-American jurors, Notire Ann Lindsey and Karyn Leason.

Once a claimant has made a prima facie case that the prosecutor was motivated by race in exercising peremptory

challenges, the burden of production shifts to the prosecutor to show a race-neutral explanation for strikes against those jurors in the arguably targeted class. See id. at 94. A district court's ruling on the motivation for the strikes is a finding of fact reviewed for clear error. United States v. Stedman, 69 F.3d 737, 739 (5th Cir. 1995). This is true "since findings in this context largely turn on an evaluation of the credibility or demeanor of the attorney who exercises the challenge." United States v. Bentley-Smith, 2 F.3d 1368, 1373 (5th Cir. 1993).

In the instant case, the prosecutor offered race-neutral reasons for the strikes of jurors Lindsey and Leason. As to Lindsey, the prosecutor indicated that he did not believe she could vote to convict. As to Leason, the prosecutor's assistant, Ms. Anderson, said that her observations of Leason's gestures indicated that Leason was uninterested in the proceedings.[1]

The district court found that the government had credibly explained a nondiscriminatory purpose for the two strikes. Similar reasons for striking jurors have been upheld. See, e.g., Stedman, 69 F.3d at 739 (a juror's lack of strong conviction was credible nondiscriminatory purpose for the exercise of a peremptory challenge); United States v. Lance, 853 F.2d 1177,

---

[1]The record makes clear that the prosecutor and Ms. Anderson communicated with each other about the potential jurors. The prosecutor asked Ms. Anderson to convey to the district court what she had told him about juror Leason and the district court permitted her to do so.

1180 (5th Cir. 1988) (a juror's inattentiveness during voir dire was an adequate basis for the prosecution's exercise of a peremptory challenge). Accordingly, the district court did not clearly err in accepting the prosecution's race-neutral explanations for the challenges.

III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.