# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2013

No. 12-30042

Lyle W. Cayce
Clerk

LON BROWN

Plaintiff-Appellant

v.

DANIEL LYNCH,
HENRY WHITEHORN, SR.,
CITY OF SHREVEPORT

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
No. 5:10-CV-1283

Before STEWART, Chief Judge, and SMITH and WIENER, Circuit Judges.

PER CURIAM:[*]

This is an appeal from a summary judgment dismissing plaintiff Lon Brown's claims against police officer Daniel Lynch, the city that employed him, and the chief of the city's police department. Brown alleged that during an investigatory stop outside a convenience store, he was subjected to a wrongful arrest and excessive force, in violation of state and federal law. Defendants moved for summary judgment, which the district court granted. Taking Brown's account of the facts as true, at least as to those not controverted by the available

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30042

audio and video evidence, we conclude that Officer Lynch did not have probable cause to arrest Brown for the crime of resisting an officer, that he applied clearly unreasonable and excessive force in effectuating that arrest, and that he did not have qualified immunity for either offense. We therefore REVERSE with respect to Brown's claims against the officer. We AFFIRM the summary judgment for the City of Shreveport and former Police Chief Whitehorn, finding no facts in the record to support a claim against either of them.

## I. FACTS AND PROCEEDING

### A.    Facts

During a traffic stop on the evening of August 13, 2009, Shreveport Police Department Officer Daniel Lynch discovered marijuana in the driver's possession. The driver explained that she had bought the marijuana outside a convenience store on the corner of Pierre Avenue and Garden Street from a dark-skinned black male with long dreadlocks and a short, stocky build. The driver added that she had purchased marijuana twice before from the same man, whom she knew as "Bam Bam," and that he drove a gold or tan Pontiac Sunfire. To attend to a call of higher priority, Officer Lynch released the driver with a warning and left.

The next day, Officer Lynch advised Cpl. Jon Flores and Officer Leroy Bates of the traffic stop and asked that they remain on the lookout for a gold or tan Sunfire. At about 9:45 p.m. that night, Officer Lynch spotted a gold Pontiac Sunfire parked outside a Fil-A-Sac convenience store on the corner of Pierre Avenue and Garden Street.[1] He observed plaintiff Lon Brown—who roughly fit the physical description obtained the night before—walk away from the general

---

[1] A high crime area, according to Officer Lynch and Cpl. Flores.

2

No. 12-30042

vicinity of the Sunfire. Officer Lynch requested backup from Cpl. Flores and Officer Bates before parking his patrol car.

Audio and video recordings from that patrol car show the events as they transpired. Officer Lynch walked to the store with Officer Bates, while Cpl. Flores followed just behind. From the store's threshold, Officer Lynch asked Brown, who was standing inside the store, how he had arrived there. Brown responded that he had driven the gold car parked outside.[2] Officer Lynch asked that Brown follow him outside the store. Brown did so, and once outside, Officer Lynch requested identification and instructed Brown to turn around and place his hands against the wall. Brown obliged both requests, and the officer frisked him for weapons.

At this point, the affiant officers' presentations of the facts differ substantially from Brown's and from the objective audio and video evidence. By the officers' account, when Brown was informed during the pat-down that he was being stopped on suspicion of selling drugs, he denied involvement and began "cussing loudly and reacting to [] questions in a hostile manner." Asked if he drove the gold Sunfire parked on the side of the store, Brown answered in the negative and told Officer Lynch that he drove a gold Lexus instead. Officer Lynch concluded the pat-down and instructed Brown to walk toward the patrol car. As the three officers and the suspect walked, Brown "became belligerent and turned towards [Officer Lynch] in an aggressive manner, shaking his finger in [Lynch's] face." Officer Lynch grabbed Brown's arm and "directed him" toward the outer wall of the convenience store, where Brown grabbed the store window's burglar bars and, despite orders to place his hands behind his back,

---

[2] The magistrate judge's memorandum ruling, on which the district court's summary judgment is based, reports that Brown pointed to the Sunfire. We cannot find this in the record; Officer Lynch's affidavit, from which the magistrate judge obtained this "fact," states only that Brown "indicated that he had driven the gold car parked outside[.]"

3

No. 12-30042

continued to clench the bars. As the officers struggled to place Brown's right hand behind his back, Cpl. Flores saw Brown's left hand move toward the front waistband of his pants. Fearing that he might be reaching for a weapon, Flores threw a "distraction strike" to Brown's face. When Brown did not then release the bars and place his hands behind his back, Officer Lynch struck Brown in the face two more times, causing Brown to release the bars.

Officers Lynch and Bates brought Brown to the ground immediately in front of the patrol car. Brown continued to resist, so Officer Lynch struck Brown three more times to force Brown to submit and place his hands behind his back. Once Officers Lynch and Bates were able to secure Brown's hands, Cpl. Flores cuffed them. Brown was searched, placed in the back of Officer Lynch's patrol car, and taken to the Shreveport City Jail, where he was booked for resisting an officer, in violation of La. R.S. § 14:108.[3]

From the time of the frisk, Brown's version of the events, supported in great part by the audio and video evidence, presents a different story.[4] While frisking Brown, Officer Lynch informed the suspect: "Reason I stopped you today is we got numerous complaints that you're selling drugs." Brown responded: "You ain't got no complaint; I ain't selling no fucking drugs." The volume of his voice was not unusual for a direct denial of criminal activity. Officer Lynch replied: "You can lose the attitude: I'm stopping you now and letting you know why I'm stopping you, you understand?" Brown again responded: "You ain't got no complaint about me selling no drugs." A loud police radio renders the next several seconds of discourse inaudible, but from what we can tell, Brown had not

---

[3] Brown was released on bond the next morning. The criminal charges against him were dismissed.

[4] Because we construe all facts "in the light depicted by the videotape" and, when inconclusive, in the light most favorable to the nonmoving party, the following is a distillation of Brown's account, as corroborated (or at least not challenged) by the audio and video evidence.

raised his voice. The conversation again becomes audible with Officer Lynch, still frisking Brown, asking Brown whether he drove a gold Sunfire. Brown denied doing so, insisting that he drove the gold Lexus parked in the lot.

At that time, Officer Lynch concluded the pat-down, which appears to have taken about 60 seconds and produced no weapons or evidence of illegal activity. Lynch instructed Brown to walk with the officers toward the police car. Brown complied, removing his hands from the wall and walking a few steps ahead of the officers. While he walked, Brown mumbled something inaudible on the tape that ignited Officer Lynch,[5] who shouted: "Hey, let me tell you something, bro. Look at me. Look at me. You can lose that fucking attitude." Brown then turned to face the officer, as he was instructed. Despite Officer Lynch's contention that Brown was "aggressive" and "belligerent," Brown actually can be seen taking a step *backward* when he began to challenge the officer's accusations, insisting "you don't have to tell me about selling no drugs." What Officer Lynch described as Brown's "shaking his finger in my face" was in fact Brown's repeatedly pointing *downward* in emphasis. His finger appears to have been no closer than 18–24 inches from Officer Lynch's face, never at eye level, and never pointed at the officer.

At this point, the video depicts Officer Lynch grabbing Brown's right arm and turning him counterclockwise against the wall and, incidentally, out of view of the camera. The other officers then closed in around Brown and, for the next twenty seconds, moved in and out of the camera's view. About ten seconds after Officer Lynch first grabbed Brown, and while Brown was allegedly gripping the burglar bars, Cpl. Flores can be seen throwing the first so-called "distraction strike." Officer Lynch's first two strikes—which appear as close-fisted blows to

---

[5] Although Brown does not discuss in his brief the content of these mutterings, he testified in his deposition that he was accusing Officer Lynch of routinely harassing innocent people in the neighborhood.

No. 12-30042

Brown's face—came 12 seconds after Flores's. Lynch, along with Officer Bates, wrestled Brown to the ground immediately in front of the patrol car. A few seconds after the takedown, Brown—on the ground and shielded from the camera by the front of the patrol car—can be heard shouting "my hands are behind my back" just as Officer Lynch began deploying what Brown contends were eight more blows to his head and upper body. Although one of the officers is heard shouting "put your hands behind your back," Brown contends that his hands *were* behind his back. The video neither confirms nor denies Brown's account, but it does show Cpl. Flores casually standing by while Officer Lynch struck Brown repeatedly.

## B.    Proceeding

Brown filed a complaint under 42 U.S.C. § 1983 against Officer Lynch, Police Chief Henry Whitehorn, and the City of Shreveport, in which he alleged that he was unlawfully detained, unlawfully arrested, and victimized by excessive force. He also asserted pendent state law tort claims based on the same conduct. Defendants moved for summary judgment on all claims, which the district court granted over Brown's opposition. Specifically, the court found that the officers' "stop" of Brown did not violate the Fourth Amendment's prohibition of unreasonable searches and seizures; that Brown's injuries were not of the constitutional significance required to survive summary judgment on an excessive force claim; and that Officer Lynch was entitled to qualified immunity on the unlawful arrest claim. Brown's pendent state law claims, analyzed according the same standards as the federal claims, were likewise dismissed. As for his claims against Shreveport and its police chief, the court held that Brown had failed to present evidence demonstrating a pattern or practice of rights deprivation, or any failure in training by Chief Whitehorn. Thus, all claims were dismissed with prejudice.

6

No. 12-30042

On appeal, Brown challenges the district court's determinations with respect to his excessive force and unlawful arrest claims against Officer Lynch. He also contends that he presented evidence of the City's customs, policies, and practices and Chief Whitehorn's failure to train that was sufficient to survive summary judgment. He has not challenged the legality of the initial stop and frisk, nor the dismissal of his state law claims.

## II.  ANALYSIS

### A.    Legal Standard

We review de novo the district court's summary judgment, applying the same standards as that court.[6] Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law.[7] A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party, and a fact issue is "material" if its resolution could affect the outcome of the action.[8] We construe all facts and inferences in the light most favorable to the nonmoving party, but when Brown's version of the facts conflicts with the audio and video evidence, we consider the facts "in the light depicted by the videotape."[9]

### B.    Claims Against Officer Lynch

### 1.    Qualified Immunity

---

[6] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[7] FED. R. CIV. P. 56(a).

[8] *Poole*, 691 F.3d at 627 (citing *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)).

[9] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

No. 12-30042

As a public official, Officer Lynch is entitled to qualified immunity on Brown's § 1983 unlawful arrest and excessive force claims unless (1) Brown has "adduced sufficient evidence to raise a genuine issue of material fact suggesting [that Officer Lynch's] conduct violated an actual constitutional right[,]" and (2) the officer's "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question."[10]  Objective reasonableness is a matter of law for the court to decide.[11]

Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate the defense once properly raised.[12] The court may exercise its discretion in deciding which prong of the two-part qualified immunity inquiry to address first.[13]

2.    Unlawful Arrest

i.    *Constitutional violation*

To establish his claim of unlawful arrest, Brown must show that, at the time of arrest, Officer Lynch lacked probable cause to believe that he was guilty of the crime charged—in this case, resisting an officer in violation of Louisiana law.[14]   Determining whether Brown was arrested without probable cause requires that we trace the progression of events to locate the constitutionally significant point at which the stop escalated to an arrest; absent probable cause

---

[10] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[11] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (citing *Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir. 1999)).

[12] *Brumfield*, 551 F.3d at 326.

[13] *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

[14] Because neither Brown nor the defendants discussed in their briefs the point at which the investigatory stop became an arrest, we requested and received supplemental briefing on the issue.

as of the moment of arrest, no *subsequent* resistance would violate Louisiana law, as the statute only prohibits resisting an officer who is making a "*lawful* arrest,"[15] and an individual in Louisiana "has a time-honored right to resist an illegal arrest."[16]

Even though the Fourth Amendment protects a suspect from unreasonable searches and seizures, under *Terry v. Ohio*,[17] an officer may conduct a brief investigatory stop on "reasonable, articulable suspicion that criminal activity is afoot."[18] But a *Terry* stop that is justified at its inception may nevertheless violate the Fourth Amendment if it is excessively intrusive in its scope or manner of execution.[19] Thus, in assessing the legality of a stop, courts are first to evaluate whether the stop was lawful at the outset and second to determine whether the officers conducted the stop in a manner "reasonably related in scope to the circumstances which justified the interference in the first place."[20] Because Brown does not challenge the legality of the stop at its inception, we need not reconsider the district court's conclusion that it was supported by reasonable suspicion. We must focus instead on the second prong: At some point during the dispute, the stop to investigate Brown for suspected drug dealing escalated to an *arrest* for the crime of resisting an officer, which arrest

---

[15] La. R.S. § 14.108 (emphasis added)*; see also Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) ("[W]hether Deville was lawfully arrested depends on whether Tarver had probable cause to conduct an arrest at all. If not, then any resistance by Deville was lawful and did not constitute 'resisting arrest.'").

[16] *State v. Ceaser*, 859 So. 2d 639, 643 (La. 2003) (citing *City of Monroe v. Goldston*, 661 So. 2d 428 (La. 1996); *White v. Morris*, 345 So. 2d 461, 465 (La. 1977)).

[17] 392 U.S. 1 (1968).

[18] *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (discussing *Terry*).

[19] *See, e.g., United States v. Johnson*, 592 F.3d 442, 451 (3d Cir. 2010).

[20] *Terry*, 392 U.S. at 19–20.

must be supported by probable cause.[21]  Defendants have not argued that the officers had probable cause to arrest Brown for any crime other than resisting an officer.

There is no bright line point of distinction between an investigatory stop and an arrest; indeed, the "endless variations in facts and circumstances"[22] preclude efforts to locate one.  An officer may use some degree of physical force to effect an investigatory stop, which force might, in some situations, include restraining the suspect with handcuffs.[23]  But such force must be objectively reasonable under the circumstances,[24] and although an officer may resort to physical restraint in special circumstances, doing so is "not ordinarily proper" without probable cause.[25]  Defendants cite a single case, *Tarver v. City of Edna*,[26]

---

[21] *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004).  "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."  *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000).

[22] *Florida v. Royer*, 460 U.S. 491, 506–07 (1983).

[23] *United States v. Jordan,* 232 F.3d 447, 450 (5th Cir. 2000) ("Handcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause."); *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993) (same).

[24] *Sanders*, 994 F.2d at 206; *cf. Muehler v. Mena*, 544 U.S. 93, 103 (2005) (Kennedy, J., concurring) (noting that although persons detained during a police search may be handcuffed in some cases, the "use of handcuffs is the use of force, and such force must be objectively reasonable under the circumstances").

[25] 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 9.2(d) (5th ed. 2012); *see also El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457–59 (8th Cir. 2011) (handcuffing violated Fourth Amendment when suspect was suspected only of nonviolent theft and circumstances did not otherwise justify use of restraints); *Lundstrom v. Romero*, 616 F.3d 1108, 1123 (10th Cir. 2010) (handcuffing violated Fourth Amendment because suspect "did not act in a threatening manner, nor did she refuse to cooperate with police"); *United States v. Arias,* 344 F.3d 623, 628 (6th Cir. 2003) (handcuffing and transporting defendants from scene made a seizure an arrest where defendants were suspected only of possessing illegal drugs); *United States v. Acosta-Colon*, 157 F.3d 9, 21 (1st Cir. 1998) (handcuffing drug courier suspects at airport converted encounter to arrest when government could not point to a specific fact or circumstance to support a reasonable belief that handcuffs were necessary to carry out the

for the proposition that "[a]n officer may handcuff a suspect when reasonably necessary to maintain the status quo and protect officer safety during an investigative stop."[27] *Tarver* provides no support for this position, however, and the quote that the defendants attribute to *Tarver* does not actually appear in that case. We have held that the use of handcuffs to detain a suspect does not *automatically* convert an investigatory stop into an arrest requiring probable cause, but we have never allowed the use of handcuffs on reasonable suspicion alone in circumstances like this when a person who is suspected of having committed a nonviolent crime on some prior date posed only such a remote threat of either fight or flight.[28]

On Brown's view of the evidence, as corroborated by the videotape, Officer Lynch converted the stop into an arrest when he turned a verbal altercation into a physical one. Brown was suspected of selling a small amount of marijuana on some prior date—not the violent crime typically justifying an investigating officer's resort to forceful restraint absent additional cause for caution. More

---

legitimate purpose of the stop).

[26] 410 F.3d 745 (5th Cir. 2005).

[27] Supplemental Brief of Appellee, 3 (internal quotation marks and brackets omitted).

[28] In the following cases with inapposite facts, this court held that handcuffing a suspect without probable cause was not a constitutional violation: *United States v. Johnson*, 445 F.3d 793, 795 (5th Cir. 2006) (officers shot at while investigating disturbance; anonymous caller named the shooter and reported that he was hiding at a specific address; another officer found shell casings in the street immediately in front of that address; officers spotted the suspect pacing in a back bedroom of that house and learned that it was not his house and that children were inside); *United States v. Lewis*, 208 F. App'x 298, 299 (5th Cir. 2006) (officers received report of an armed man making threats; suspect made statement that officer reasonably took as admission that he had a gun; suspect had not yet been frisked); *Jordan,* 232 F.3d at 450 (man suspected of robbery stopped by two officers; refused order to place hands on car; jerked arm away from officer who had grasped it; wouldn't answer questions; had not been frisked); *United States v. Campbell*, 178 F.3d 345, 349 (5th Cir. 1999) (three officers attempting to control three armed bank robbery suspects; suspect, although lying on the ground, had not been frisked).

importantly, Officer Lynch had already frisked Brown for weapons, finding none. The officers characterize the frisk as "quick" and "restricted," but the videotape evidences a pat-down lasting an entire minute and covering much of Brown's body. The reasonableness of the officer's belief that Brown posed a threat depends on the scope of the pat-down and whether a concealed weapon might actually have gone undetected. Summary judgment is inappropriate in light of these disputed issues of material fact.

Fact issues likewise prevent us from concluding that Brown's words, gesticulations, and demeanor were so threatening that Officer Lynch was reasonable in forcing Brown to the wall and attempting, with the support of two other officers, to handcuff him. It is undisputed that Brown made no verbal threats at any time, and that he made no attempt to flee. The parties also agree, generally, and the audio confirms, that Brown was firmly insistent that he had been misidentified, that he was not selling drugs, and that he did not drive the suspected gold Sunfire. They agree further that during his conversation with the officers, Brown littered his defense with the word "fucking," used adjectivally in emphasis, but that Officer Lynch used the same word. In dispute, however, is Brown's overall demeanor. The officers describe Brown as "belligerent" during the encounter, based largely on the purportedly "aggressive manner" in which Brown turned toward Officer Lynch and the way he pointed his finger, allegedly in Officer Lynch's face.

The video supports Brown's contention that he was not aggressive with the officers: After the pat-down concluded, and as he walked with the three officers closely behind him, Brown mumbled a few words that prompted Officer Lynch to demand that Brown "lose the fucking attitude" and turn around to face him. Brown did turn around, as instructed, but in a way that the officers contend, without any explanation, was threatening. Brown never stepped toward Lynch or any of the other officers, and in fact, can be seen taking a single step

12

No. 12-30042

*backward* when Lynch told him to lose the attitude. His one gesture—characterized by the officers as finger-shaking in Officer Lynch's face—can be interpreted instead as Brown's merely emphasizing his innocence in a way that no reasonable officer would perceive as threatening. Even if Lynch *had* felt threatened, he could have asked the suspect to place his hands behind his back or to face the wall; Brown had, after all, complied with every order up to this point.

Other elements of the encounter add little to support Officer Lynch's claim that he did not exceed the scope of a lawful stop in seeking to restrain Brown: Three officers were present to manage the one suspect; Brown was not evasive when the officers first approached him; he had complied with all of the officers' demands; the interaction took place in a well-lighted public place where Brown would have no tactical advantage in fight or flight; and there was ample doubt whether Brown was even the man for whom the officers were looking.[29] Given the totality of the circumstances based on Brown's version of the facts, we conclude that Officer Lynch was unreasonable in seeking to restrain the suspect—unless, that is, he had probable cause to make an arrest.

Having reached this conclusion, we must consider whether, at the time that he pushed Brown against the wall and attempted to apply handcuffs, Officer Lynch had probable cause to make an arrest for the offense of resisting an officer—the only crime charged. La. R.S. § 14:108 defines that crime as:

> the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and

---

[29] Brown arguably met the (rather vague) physical description of the supposed drug dealer, but he denied driving a gold Sunfire, insisting instead that he drove a gold Lexis. He was never asked about the nickname "Bam Bam" to which the alleged dealer supposedly answered. The frisk of his person did not produce weapons or contraband. And, when informed by the investigating officer that he had received "numerous complaints" alleging that Brown had been selling drugs—an untrue accusation—Brown reacted as would many, if not most, wrongfully accused suspects: He denied it, and did so vehemently.

13

No. 12-30042

authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

The statute further explains that the phrase "obstruction of" shall, in addition to its common meaning, include the following:

(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.

(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.

(c) Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

(d) Congregation with others on a public street and refusal to move on when ordered by the officer.

Brown contends that, during the entire altercation, he did nothing to interfere with, oppose, resist, or obstruct the officers as they detained him to investigate the suspected drug dealing. We agree.

It is undisputed that, until the point of arrest, Brown had simply walked out of the convenience store, provided proper identification, submitted to a frisk, answered questions, walked toward the police car, and turned around to face Officer Lynch—all exactly as instructed. Perhaps he failed to "lose the attitude," as Officer Lynch had demanded, but any hostility in his tone did not obstruct the officers' investigatory stop—and defendants do not contend otherwise. Taking the facts as depicted in the video and otherwise in the light most favorable to Brown, Officer Lynch wrongfully arrested Brown for the crime of resisting an officer.

14

No. 12-30042

*ii.    Clearly established law*

In August 2009, Louisiana law clearly required *some* form of resistence for an officer to make an arrest under La. R.S. § 14:108.  Defendants do not contend on appeal that Officer Lynch reasonably, even if mistakenly, could have believed that he had probable cause to arrest before he first attempted to restrain Brown.

The more difficult question is whether clearly established law had put Officer Lynch on notice that forcefully cuffing Brown would, in fact, escalate the investigatory stop to an arrest when Brown: (1) had been stopped in a public place, alone and outmanned by three officers on suspicion of selling marijuana on some earlier date; (2) had provided identification; (3) had submitted to a pat-down and been found not to be carrying weapons or contraband; (4) had complied with officers' orders; (5) had not threatened officers or anyone else; and (6) had, in the course of protesting his innocence, used crass language and raised his voice.  We conclude that Officer Lynch was indeed on such notice.

In the qualified immunity analysis, "[t]he central concept is that of 'fair warning[.]'"[30]  Although we have noted that handcuffing a suspect does not *automatically* convert an investigatory stop into an arrest requiring probable cause, we have cautioned that police are not authorized to employ these procedures absent some colorable justification for so doing.[31]  The touchstone in this circuit remains "reasonableness under the circumstances,"[32] and the constitutional test requires that we ask "whether the police were unreasonable in failing to use less intrusive procedures to safely conduct their investigation."[33]

---

[30] *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[31] *Sanders*, 994 F.2d at 206.

[32] *Id.*

[33] *Jordan*, 232 F.3d at 450.

Given this clearly established rule, defendants have failed to offer a single case that might render ambiguous whether an officer may use handcuffs during an investigatory stop absent *any* special circumstances to justify that added degree of caution.

Viewing the evidence in the light depicted by the videotape and otherwise in the light most favorable to Brown, we conclude that Officer Lynch acted contrary to clearly established law when, without probable cause, he pushed Brown against the wall and cuffed him. We express no opinion whether Officer Lynch will ultimately be entitled to qualified immunity; we merely note that we are precluded from affirming the summary judgment on this record.

### 3.   Excessive Force[34]

#### i.   *Constitutional violation*

To establish an excessive force claim under the Fourth Amendment, Brown must demonstrate that he suffered: (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.[35] The district court considered only the first element of the excessive force test, reasoning that Brown suffered only *de minimis* injury and thus failed to reach the requisite Fourth Amendment threshold. We begin by noting that although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is "directly related to the amount of force that is constitutionally permissible under

---

[34] Brown's "excessive force claim is separate and distinct from [his] unlawful arrest claim, and we must therefore analyze the excessive force claim without regard to whether the arrest itself was justified." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007); *see also*, *e.g.*, *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) (en banc) ("[I]n a case where police effect an arrest without probable cause . . . but use no more force than would have been reasonably necessary if the arrest or detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.").

[35] *Tarver*, 410 F.3d at 751.

No. 12-30042

the circumstances."[36] Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold,[37] and, conversely, objectively reasonable force will result in *de minimis* injuries only. Thus,"only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment."[38] And as long as a plaintiff has suffered "some injury,"[39] even relatively insignificant injuries[40] and purely psychological injuries[41] will prove cognizable when resulting from an officer's unreasonably excessive force.

Whether the amount of force used is clearly "excessive" and "unreasonable"[42] depends on "the facts and circumstances of each particular case."[43] Under *Graham v. Connor*, relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting

---

[36] *Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996) (citations omitted); *see also Flores v. City of Palacios,* 381 F.3d 391, 399 (5th Cir. 2004) (noting that the minimum qualifying injury "changes with the facts of each case"); *Williams*, 180 F.3d at 704 ("What constitutes an injury in an excessive force claim is . . . subjective—it is defined entirely by the context in which the injury arises.").

[37] *Ikerd*, 101 F.3d at 434 n.9.

[38] *Id.*; *see also Goffney v. Sauceda*, 340 F. App'x 181, 184 (5th Cir. 2009).

[39] *Ikerd*, 101 F.3d at 434.

[40] *See, e.g.*, *Schmidt v. Gray*, 399 F. App'x 925, 928 (5th Cir. 2010) (pain, soreness, and bruising resulting from an officer's slamming a car's trunk lid on a suspect's finger was a legally cognizable injury). *But see Freeman*, 483 F.3d at 417 ("[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force.").

[41] *Flores,* 381 F.3d at 398 (psychological injuries alone may sustain a Fourth Amendment excessive force claim).

[42] These inquiries "are often intertwined." *Poole*, 691 F.3d at 628; *see also Deville*, 567 F.3d at 167 (addressing simultaneously the questions whether the force was "excessive" and "unreasonable").

[43] *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004).

to evade arrest by flight."[44]   Because law enforcement officers must make split-second decisions in difficult and potentially dangerous situations, we evaluate the reasonableness of the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[45]

Applying the *Graham* factors to this case, we are satisfied that genuine issues of material fact prevent us from determining whether Officer Lynch's many closed-fisted strikes to Brown's face and body were clearly excessive and unreasonable.  Brown was being detained on Officer Lynch's suspicion that he had sold marijuana on some prior date—not a trivial offense, but also not one to put any person in real or immediate danger.  Even if the officer's training and experience had led him to be concerned that Brown—like other suspected drug dealers—might be armed, those suspicions should have dissipated after he extensively frisked the suspect.  Although Officer Lynch contends that the pat-down was "quick" and "restricted," the video depicts a minute-long frisk that at least creates a factual issue whether a weapon might reasonably have gone undetected.

No other facts support a belief that Brown posed an immediate threat to the three officers or to bystanders: Brown was unaccompanied on his trip to the Fil-a-Sac convenience store, and the officers do not suggest that they believed others might join in defending him.  At no point did Brown make threats, show physical aggression, or give any other indication that he posed a safety risk or a flight risk.  Rather, he had complied with every order up until the point that Officer Lynch escalated the altercation from verbal to physical.

As for whether and to what extent Brown resisted arrest, the parties' factual accounts differ.  The officers contend that Brown refused to release his

---

[44] *Graham*, 490 U.S. at 396.

[45] *Id.*

grip on the burglar bars and allow himself to be cuffed, and that, after he was taken to the ground, he continued to struggle to keep his hands from becoming joined behind his back. Brown denies grabbing the burglar bars and likewise denies struggling to resist the officers' efforts to cuff him once he was on the ground. Although *some* degree of resistence is evident,[46] whether that resistence continued after Brown was taken to the ground and before Officer Lynch began striking him again is unclear from the video. In any case, the only resistence confirmed by the video was not the "active resistence" to which the *Graham* Court was referring.[47]

Also in dispute is the nature of the force used—specifically, where on the body Officer Lynch struck Brown, the number of blows, and whether the strikes continued after the officers had neutralized whatever threat Brown conceivably could have posed. Defendants contend that Officer Lynch struck Brown three times on the upper body after Brown was on the ground and continuing to resist. Brown counters that, after he was taken to the ground, Lynch struck him *eight times* in the upper body *and the face* despite *no resistence* on Brown's part. The video appears to show Officer Lynch throwing eight punches while Brown was lying on his stomach, all of which came after Brown first yelled "my hands are behind my back!" Brown continued to declare "my hands are behind my back" as he was being struck, although an officer is heard demanding at that same time that Brown comply and place his hands behind his back. The part of Brown's body absorbing the blows is unclear from the video.

---

[46] The video confirms, for example, that Brown did not immediately collapse when dragged to the ground by several officers, and that he struggled to prevent an officer from placing his left hand behind his back on the way to the ground.

[47] *See, e.g.*, *Newman*, 703 F.3d 757 (suspect's pushing himself off car and failing to fall to the ground were not "active resistence").

No. 12-30042

A factfinder could reasonably conclude, based on Brown's account and the audio and video evidence, that Officer Lynch had struck an unresisting suspect eight times in the body and face with closed fists. Further, a factfinder could conclude that the initial pat-down was thorough enough to eliminate any doubt about whether a weapon remained undetected in Brown's possession. Under the totality of these summary judgment facts, Officer Lynch's use of force would be clearly excessive and unreasonable as a matter of law.[48]

In concluding that, on Brown's and the camera's versions of the facts, the force used clearly exceeded that which a reasonable officer would deem warranted, we also conclude that Brown's injuries, although minor, were constitutionally significant.[49]

## ii.    Clearly established law

At the time of the incident, the law was clearly established in this circuit that repeatedly striking a non-resisting suspect is excessive and unreasonable force.[50] Because facts bearing on Brown's resistence, the force used, and Officer

---

[48] *See, e.g., Staten v. Tatom*, 465 F. App'x 353, 359 (5th Cir. 2012) (finding summary judgment inappropriate when the parties "present[ed] a number of disputes of material fact, including, objectively, whether or how much Plaintiff was resisting, the amount of force Defendant actually used at each stage of the encounter, and whether that force was reasonable").

[49] *See Ikerd*, 101 F.3d at 434 n.9.

[50] *Bush v. Strain*, 513 F.3d at 502 (5th Cir. 2008) (holding that an officer had used excessive force when he slammed a suspect's face into a vehicle after she had ceased resisting arrest); *Goodson*, 202 F.3d at 740 (officers violated clearly established right when they tackled assault suspect, breaking his shoulder, after he pulled his arm away from grabbing officer and took few steps backward); *see also Anderson v. McCaleb,* 480 F. App'x 768, 773 (5th Cir. 2012) (concluding that, while a "reasonable use of force for purposes of the Fourth Amendment is not capable of precise definition or mechanical application[,]" in December 2008, a police officer "should have known that he could not beat [the suspect] after he stopped resisting arrest") (internal quotation marks omitted).

No. 12-30042

Lynch's reasonable beliefs about the threat posed remain genuinely in dispute, summary judgment is not appropriate.

**C.     Claims Against the City and Police Chief Whitehorn**

Brown also contends that his injures resulted from the unlawful policies, practices, and customs of the City of Shreveport and its police department, and from Chief Whitehorn's failure to train his officers adequately.

A municipality is not liable under § 1983 on the theory of respondeat superior. Only those acts directly attributable to it "through some official action or imprimatur" may impart such liability.[51] To establish municipal liability under § 1983, a plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[52] In his opposition to the defendants' motion for summary judgment, Brown defended his claim against the City by asserting conclusionally that his "injuries were caused by the unlawful policies and practices of the Shreveport Police Department." Brown never identified any policy or custom, and, failing that first step, also failed to show a policymaker's actual or constructive knowledge of the same and to link the constitutional violation to that policy or custom. His appellate brief is likewise deficient. The district court properly granted summary judgment.

To support his claim that Chief Whitehorn failed to train his subordinate officers adequately, Brown had to show that: (1) the training policies were inadequate; (2) Chief Whitehorn was deliberately indifferent to the inadequacy;

---

[51] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[52] *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

and (3) the inadequate policy directly caused Brown's constitutional injury.[53] Yet Brown sought to survive summary judgment with more conclusional allegations that fail to raise a genuine issue of material fact as to these elements.  He claimed only that "Chief Whitehorn failed to train and supervise employees of the Shreveport Police Department and plaintiff has suffered a deprivation of his constitutional rights[] as a result of it."  As regards the second required element, for example, the Supreme Court has indicated that proving deliberate indifference usually requires a plaintiff to identify a pattern of similar constitutional violations,[54] but Brown did not point to *any* similar incidents, much less a pattern of them.  For this reason alone, summary judgment was appropriate.[55]

## III.  CONCLUSION

Because genuine issues of material fact preclude summary judgment for Officer Lynch on Lon Brown's § 1983 claims of unlawful arrest and excessive force, we REVERSE the district court as to these claims and REMAND for

---

[53] *Carnaby*, 636 F.3d at 189; *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

[54] *See Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011) (holding that a district attorney's office cannot be held liable for failing to train its prosecutors when the plaintiff proves only a single violation arising from the inadequate training).

[55] On appeal, Brown points for the first time to Officer Lynch's deposition testimony as evidence of Chief Whitehorn's failure to train.  In that testimony, Lynch showed himself unknowledgeable about a citizen's right to resist an unlawful arrest under Louisiana law.  The testimony does not indicate any deliberate indifference on Chief Whitehorn's part, however, nor does it demonstrate causation: Lynch believed his arrest to be *lawful*, so this faulty understanding of Louisiana law would not have changed his response to Brown's alleged behavior.  In any event, Brown has waived the argument on appeal by failing to raise it in the district court.  *See, e.g., Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000) ("Arguments not raised in the district court cannot be asserted for the first time on appeal."); STEPHEN ALAN CHILDRESS & MARTHA S. DAVIS, 1 FEDERAL STANDARDS OF REVIEW § 6.03 (4th ed. 2010) ("[C]ourts have developed the general rule that applicants may not assert facts or theories to the court of appeals that were not urged before the district court.").

further proceedings consistent with this opinion.   We AFFIRM the court's summary judgment with respect to Brown's claims against Chief Whitehorn and the City of Shreveport.