United States Court of Appeals,

Fifth Circuit.

No. 95-31240

Summary Calendar.

Kenneth IKERD, Individually and on Behalf of his Minor Child,
Laura Ikerd;  Sharon Ikerd, Individually and on Behalf of her Minor
Child, Laura Ikerd, Plaintiffs-Appellants,

v.

Duane BLAIR, Sheriff;  Harold Varnado, Deputy Sheriff,
Incorrectly Sued as Ray Varnado;  Roy Stevens, Deputy Sheriff,
Defendants-Appellees.

Dec. 12, 1996.

Appeal from the United States District Court for the Eastern
District of Louisiana.

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This appeal requires us to determine whether the district
court erred in granting a deputy sheriff's motion for judgment as
a matter of law regarding an excessive use of force claim.  We hold
that the evidence viewed in the light most favorable to the
plaintiff is sufficient for a reasonable fact finder to conclude
that the deputy injured a ten-year-old girl when he violently and
without cause jerked her out of a chair in the living room of her
home and dragged her across the room by her arm.  Accordingly, we
find that a reasonable jury could conclude that the deputy used
excessive force in violation of the Fourth and Fourteenth
Amendments to the United States Constitution.  We therefore vacate
the judgment of the district court.

I. Proceedings Below.

1

Plaintiffs Kenneth and Sharon Ikerd, a married couple, brought this action for damages on their own behalf and on behalf of their minor daughter pursuant to 42 U.S.C. § 1983. The plaintiffs alleged that they sustained injuries as a result of the unconstitutional conduct of several law enforcement officers. The plaintiffs alleged that on October 8, 1992, the defendants falsely arrested Kenneth Ikerd and subjected him to excessive force, intimidation, and harassment. In addition, at the time of the alleged false arrest, the plaintiffs claimed that officer Harold Varnado, Jr., acting under color of state law, used excessive force against Laura Ikerd in violation of the Fourth and Fourteenth Amendments.

A jury trial was commenced before a magistrate judge on November 6, 1995.[1] At the close of the evidence, the defendants moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure.[2] The court submitted the case to

_____

[1]An earlier trial in this case resulted in a mistrial because of the unexcused absence of a juror. At the close of the plaintiffs' evidence in the first trial, the court dismissed several of the plaintiffs' claims pursuant to Rule 50 of the Federal Rules of Civil Procedure. *See* note 2. The dismissed claims are not at issue in this appeal.

[2]Rule 50 provides, in part:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

2

the jury without ruling on the defendants' motion.[3] After deliberating for approximately eleven hours, the jury returned verdicts in favor of the defendants on the false arrest and excessive force claims asserted by Kenneth Ikerd. The jury, however, remained deadlocked on Laura Ikerd's claim of excessive force against Deputy Varnado in his personal capacity.

On November 9, 1995, the court declared a mistrial with respect to Laura Ikerd's claim. The court indicated in a conference with the parties' attorneys that Deputy Varnado's pending Rule 50 motion would be denied because of factual conflicts in the record. Nonetheless, the court later reconsidered the evidence and granted Deputy Varnado's motion for judgment as a matter of law because "the defendant's act could not have amounted to anything more than a de minimis use of force." On November 15, 1995, the court entered judgment in favor of the defendants on all claims, including Laura Ikerd's excessive force claim. This appeal followed.

## II. Standard of Review

We review the district court's grant of judgment as a matter of law de novo. *Garcia v. Woman's Hosp. of Texas,* 97 F.3d 810, 812 (5th Cir.1996). We consider all of the evidence "in the light and

FED.R.CIV.P. 50(a)(1).

[3] Whenever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion....

FED.R.CIV.P. 50(b).

with all reasonable inferences most favorable to the party opposed to the motion." *Id.* (quoting *Resolution Trust Corp. v. Cramer,* 6 F.3d 1102, 1109 (5th Cir.1993)). "If the facts and inferences point so strongly in favor of the moving party that the reviewing court believes that reasonable jurors could not have arrived at a contrary verdict, then we will conclude that the motion should have been granted." *Id.* (citing *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc)).

### III. Facts

On the morning of October 8, 1992, ten-year-old Laura Ikerd and her eight-year-old brother were at home in their living room watching television. Deputies Harold Varnado, Jr. and Roy Stephens of the Washington Parish Sheriff's Office arrived at their home dressed in plain clothes. The officers did not identify themselves but asked to speak to the children's father. Laura woke her father who went to the front door to meet the deputies.

As Kenneth Ikerd approached the front door to meet the deputies, he asked if he could help the officers. Deputy Varnado responded: "You're under arrest for molestation of Jimmy Buras'[s] kids and your two kids."[4] After hearing these allegations, Laura went into the living room and started to cry. Kenneth Ikerd and the deputies followed Laura into the living room.

At this time, Deputy Varnado asked Kenneth Ikerd why his

---

[4]Kenneth Ikerd was never charged with any crime related to these allegations. On the contrary, the authorities, including Deputy Varnado, concluded that the child molestation allegations against Kenneth Ikerd were not true.

children were not in school. Mr. Ikerd told the officers that he had allowed them to stay home as a reward for getting good grades on their report cards. When the officers continued to press Mr. Ikerd on this issue, Laura prepared to say something. Mr. Ikerd told Laura to be quiet, but Deputy Varnado said that Mr. Ikerd should shut up and let her answer. When Deputy Varnado asked Laura why she was not in school, Laura refused to answer and told him to leave her alone.

Deputy Varnado approached Laura and violently jerked her out of her chair by her right arm and dragged her into the kitchen. Deputy Varnado told Mr. Ikerd to shut up and get out of the way while he whispered something into Laura's ear. Mr. Ikerd left the kitchen pursuant to Deputy Varnado's orders.

Laura's right arm had been broken and surgically repaired about one year prior to this incident. Laura testified that the force used by Deputy Varnado in pulling her out of the chair "hurt a lot." Before this incident, Laura's arm had been healing well and her only complaint to her family was of minor tingling in her fingers. After this incident, however, Laura complained much more frequently about her arm, lamenting that she was experiencing complete numbness in her fingertips and pain in the arm.

Laura's physician testified that on October 15, 1992, when he first examined Laura after the incident, Laura complained of pain in her forearm and tingling in her fingertips. Laura's injury was diagnosed as "mild soft tissue injury to the forearm." Prior to the October 8 incident, Laura had not complained to her doctor of

5

tingling in her fingers. Laura's doctor testified that such a symptom could have been caused by trauma or damage to the nerves of Laura's forearm as a result of being grabbed.

In addition to her physical injuries, a clinical psychologist and a psychiatrist both diagnosed Laura as having suffered from post-traumatic stress disorder as a result of the October 8 incident. After the incident, Laura had difficulty concentrating and her grades in school dropped. Laura frequently cried when she discussed the incident or saw police cars, suffered from recurring headaches and bad dreams, and frequently replayed the incident in her mind.

Deputy Varnado acknowledged in his testimony at trial that he is a "big old boy" who weighed close to 300 pounds at the time of trial. Furthermore, Deputy Varnado testified that there was never a need to use any physical force against Laura.[5] When asked whether there was any need to place his hands on Laura, Deputy Varnado responded, "None whatsoever."

## IV. Legal Discussion

Appellants claim that a reasonable jury could conclude that Deputy Varnado used excessive force against Laura Ikerd in the course of arresting her father. The Supreme Court has held that "all claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other "seizure' of a free citizen should be analyzed under the Fourth

---

[5]Deputies Varnado and Stephens both testified at trial that Varnado never touched Laura's arm at all.

6

Amendment and its "reasonableness' standard...." *Graham v. Connor,*
490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).[6]
"As in other Fourth Amendment contexts, however, the
"reasonableness' inquiry in an excessive force claim is an
objective one: the question is whether the officers' actions are
"objectively reasonable' in light of the facts and circumstances
confronting them, without regard to their underlying intent or
motivation." *Id.* at 397, 109 S.Ct. at 1872 (citations omitted).

It is clearly established law in this circuit that in order
to state a claim for excessive force in violation of the
Constitution, a plaintiff must allege "(1) an injury,[7] which (2)

---

[6]The *Graham* Court noted that "[a] "seizure' triggering the
Fourth Amendment's protections occurs only when government actors
have, "by means of physical force or show of authority, ... in some
way restrained the liberty of a citizen.' " *Id.* (quoting *Terry v.
Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d
889 (1968)). It is undisputed that a seizure occurred in the
instant case when Deputy Varnado grabbed Laura Ikerd's arm. *See
Thomas v. Frederick,* 766 F.Supp. 540, 553-55 (W.D.La.1991)
(concluding that although the police never attempted to arrest a
woman, a fourth amendment seizure occurred when the police used
excessive force against her).

[7]At one time, this circuit required a plaintiff to establish
a "serious injury" in order to prevail in an excessive use of force
action. *See, e.g., Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989)
(en banc). Proof of serious injury is no longer necessary for
claims based on conduct occurring after February 1992, when the
Supreme Court invalidated that requirement. *Hudson v. McMillian,*
503 U.S. 1, 4, 112 S.Ct. 995, 997-98, 117 L.Ed.2d 156 (1992). *See
also Knight v. Caldwell,* 970 F.2d 1430, 1432 (5th Cir.1992), *cert.
denied,* 507 U.S. 926, 113 S.Ct. 1298, 122 L.Ed.2d 688 (1993) ("The
Supreme Court's decision makes clear that we can no longer require
persons to prove "significant injury' ... under section 1983");
*Dunn v. Denk,* 79 F.3d 401, 404 (5th Cir.) (en banc), *cert. denied,*
--- U.S. ----, 117 S.Ct. 61, --- L.Ed.2d ---- (1996) (Barksdale,
J., concurring) ("*Johnson v. Morel* controlled from early July 1989
until late February 1992, when its significant injury prong was
overruled by *Hudson v. McMillian* " (internal citations omitted)).
The alleged conduct in the instant case occurred on October 8,

7

resulted directly and only from the use of force that was clearly excessive to the need;[8] and the excessiveness of which was (3) objectively unreasonable." *Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir.1993) (internal quotations omitted). In gauging the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for that force. *Id.*

In *Hudson v. McMillian,* 503 U.S. 1, 9-10, 112 S.Ct. 995, 1000-01, 117 L.Ed.2d 156 (1992), the Supreme Court recognized that "[t]he Eighth Amendment's prohibition of "cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind.' " (internal quotations omitted). In granting Deputy Varnado's motion for judgment as a matter of law, the district court relied on this language and concluded that the "defendant's act could not have amounted to more than a de minimis use of force."

The *Hudson* Court recognized that a constitutional violation does not occur every time an officer touches someone. In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation.

_____

1992, and is therefore controlled by *Hudson.*

[8]In *Dunn,* 79 F.3d at 403, this court held that a § 1983 plaintiff can recover for "aggravation of a preexisting injury caused by the use of excessive force." Thus, although Laura's injuries were exacerbated by the fact that her arm had previously been broken, this circumstance does not preclude her from recovering damages for any excessive force used against her.

When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes.[9]

The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed.  For example, a convicted prisoner clearly does not have a cognizable eighth amendment claim every time he or she is pushed or shoved.  *See id.* at 9, 112 S.Ct. at 1000 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).  Similarly, even in the fourth amendment context, a certain amount of force is obviously reasonable when a police officer arrests a dangerous, fleeing suspect.  *See Tennessee v. Garner,* 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985).  On the other hand, in the context of custodial interrogation, the use of nearly any amount of force may result in a constitutional violation when a suspect "poses no threat to [the officers'] safety or that of others, and [the suspect] does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified."  *Ware v. Reed,* 709 F.2d 345, 351 (5th Cir.1983).

Similarly, we believe that the amount of injury required to prevail in an excessive force action depends on the context in

---

[9]In the fourth amendment context, any force exerted by a law enforcement officer that would be objectively reasonable under *Graham* would also be de minimis under *Hudson.*  Similarly, any force that would be objectively unreasonable under *Graham* would not fall within the de minimis language of *Hudson.*  In other words, only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment.

which the injury occurs.[10]  Nonetheless, this circuit currently requires a plaintiff to have "suffered at least some injury." *Jackson v. R.E. Culbertson,* 984 F.2d 699, 700 (5th Cir.1993).  As the Supreme Court has recognized, however, "the extent of injury suffered by a [plaintiff] is one factor that may suggest whether the use of force" was excessive "in a particular situation." *Hudson,* 503 U.S. at 7, 112 S.Ct. at 999.  Therefore, the amount of injury necessary to satisfy our requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances.

We hold that the evidence presented in this case is sufficient for a reasonable jury to conclude that Deputy Varnado used objectively unreasonable force against Laura Ikerd in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.  Deputy Varnado acknowledged that there was no need to use any physical force against Laura.  Laura was not under arrest and posed no threat to anyone.  *See United States v. Sanchez,* 74 F.3d 562, 566 (5th Cir.1996).[11]

---

[10]At least one court has suggested that no physical injury is required to state an excessive force claim when a police officer holds a gun to the head of a nine-year-old child and threatens to pull the trigger. *See McDonald, III v. Haskins,* 966 F.2d 292, 292-95 (7th Cir.1992).  We need not address this issue because Laura Ikerd has alleged and presented evidence of physical injuries resulting from Deputy Varnado's conduct.

[11]*See also McDonald, III,* 966 F.2d at 292-95 (holding that the facts that the plaintiff was nine-years-old, was not under arrest, and posed no threat to the officers or the general community were "the very ingredients relevant to an excessive force inquiry").

Nonetheless, the appellants produced evidence that Deputy Varnado, a 300-pound man, violently jerked Laura, a ten-year-old child, out of her living room chair and dragged her into another room. Furthermore, the alleged force employed by Deputy Varnado resulted in Laura suffering soft tissue injury to her forearm, possible nerve damage, and post-traumatic stress disorder. Viewing the evidence in the light most favorable to Laura, as required under *Boeing,* we conclude that the district court erred in granting Deputy Varnado's motion for judgment as a matter of law.

The judgment of the district court is VACATED and REMANDED for further proceedings.