**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-10640
Summary Calendar

RAY CHARLES TANNER,

Plaintiff-Appellant,

VERSUS

ROBERT HARRIS, Sheriff, Kaufman County; BILLY VALENTINE,

Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Texas

(USDC No. 3:99-CV-2935-R)

December 12, 2001

Before DeMOSS, PARKER and DENNIS, Circuit Judges

PER CURIAM: *

Ray Charles Tanner ("Tanner"), Texas prisoner # 462289, appeals the summary-judgment dismissal of his *pro se* 42 U.S.C. § 1983 civil rights suit for damages he contends he suffered when Kaufman County, Texas, Deputy Sheriff Billy Valentine ("Valentine")

---

*Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

allegedly used excessive force during his arrest.

Sergeant Billy Valentine ("Valentine"), Kaufman County, Texas, Sheriff's Department, responded to an alarm in the clubhouse of the Creekview Golf Course in Kaufman County on the evening of December 14, 1999. In the company of other law enforcement officers, he observed that the glass had been entirely broken out of a first-floor window. One of the other officers had seen someone inside. They proceeded through the window and apprehended Tanner, who had hidden himself in a small locker after he had eaten some potato chips, stolen some money and saw the officers looking through the window. Valentine pulled Tanner out of the locker, placed him on the floor and handcuffed him. The officers were unsure whether there were any other intruders in the clubhouse and elected to escort Tanner out of the building as expeditiously as possible. In so doing, they exited through the same window instead of a deadbolted door. Valentine released his grip on Tanner, who stepped over the 2 foot high window sill and placed one foot on the other side. Valentine then pushed Tanner through the window. Tanner characterizes the push as "violent" while Valentine describes it as a "gentle" means of effectuating Tanner's movement through the window. Tanner lost his balance and fell to the porch. Valentine assisted him up and the party left the area of the building. Tanner declined medical treatment after his fall and did not complain of any injury. A medical examination conducted in jail revealed no injury and Tanner was treated with ibuprofen. He

now claims to have suffered back and leg injuries leaving him with uncontrollable muscle spasms which he contends were caused by the alleged excessive force applied by Valentine's push. His lawsuit asserted that Valentine violated 42 U.S.C. § 1983 and Tanner's rights under the Fourth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution. Sheriff Harris, originally named as a defendant, has since been dismissed from the claim. The parties agreed to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). Valentine moved for summary judgment.

The magistrate judge ruled that Tanner's claim properly fell under the Fourth Amendment as a matter occurring during arrest, and dismissed the Sixth, Eighth and Fourteenth Amendment claims. He then granted summary judgment, finding that the force applied was neither excessive to the need nor objectively unreasonable.

On appeal, Tanner complains that the magistrate judge did not rule on the motions he appended to his objection to Valentine's summary judgment motion. He asserts that the magistrate judge should not have granted summary judgment to Valentine because the magistrate judge found that Tanner had established the first element of an excessive-force claim. Although his third argument is difficult to construe, he appears to contend that Valentine is not entitled to qualified immunity from his excessive-force claim, and that he did not pose any threat to the officers and was not resisting arrest or attempting to flee. He reasserts his argument that Valentine used unreasonable and excessive force in pushing him

3

through the broken clubhouse window.

This court reviews a grant of summary judgment *de novo*. *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996). Summary judgment is appropriate when, considering all of the allegations in the pleadings, depositions, admissions, answers to interrogatories, and affidavits, and drawing inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc); *Newell v. Oxford Management, Inc.*, 912 F.2d 793, 795 (5th Cir. 1990). There is no genuine issue of material fact if, taking the record as a whole, a rational trier of fact could not find for the nonmoving party. *Newell*, 912 F.2d at 795. If the moving party meets the initial burden of showing that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence or set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); Fed. R. Civ. P. 56(e). A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23. The nonmovant cannot satisfy his summary-judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little*, 37 F.3d at 1075.

To state a claim under § 1983, a plaintiff must allege that

some person has deprived him of a federal right and that the person who has deprived him of that right acted under color of state law. 42 U.S.C. § 1983; *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir. 1997). A claim that a law enforcement officer used excessive force in the course of a seizure is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). An excessive use of force claim requires a plaintiff to prove 1) an injury, which 2) resulted directly and solely from the use of force that was clearly excessive to the need, and the excessiveness of which was 3) objectively unreasonable. *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996). Whether the force used was objectively reasonable is determined by balancing "the amount of force used against the need for that force." *Id.* at 434. Further, determining "reasonableness" under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

The reasonableness of a particular use of force is not judged by considering the law enforcement officer's actual state of mind or subjective motivations. *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992)(en banc). Rather, reasonableness is judged

5

from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The answer to this question should include consideration of the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation. *Id.* at 396-97. This standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

The magistrate judge did not err in determining that Tanner had failed to carry his burden to show that the force used was clearly excessive and objectively unreasonable. Viewing the circumstances objectively, Valentine and Moore were faced with getting themselves and a burglary suspect out of a dark, locked, burglarized building, not knowing whether an accomplice, perhaps armed, was concealed in the building. Although it is undisputed that Tanner was not attempting to flee, it is also undisputed that he concealed himself in a locker in an attempt to avoid apprehension. Under these circumstances, it was not unreasonable for Valentine to act with haste in getting Tanner, himself, and

6

Moore out of the building, making a judgment to use the already-opened window as the quickest means of egress, nor was it unreasonable that he pushed Valentine in his haste to get him out, such force not being excessive in relation to the need. *See Graham*, 490 U.S. at 396-97. Although later facts would show that Valentine could have made a leisurely exit safely (after confirming that there were no other suspects in the building), Valentine's actions should not be judged with the "20/20 vision of hindsight." *Id.* at 396. Accordingly, Tanner's excessive-force claim fails.

The uncontroverted evidence established that even if Valentine used force by pushing Tanner to effectuate his exit from the building burglarized by Tanner, such force was neither clearly excessive to the need nor objectively unreasonable. *See Ikerd*, 101 F.3d at 433-34. Thus, Tanner's excessive-force claim fails.

Tanner's remaining arguments are unavailing. The asserted discrepancies in his deposition testimony were minor and did not affect the magistrate judge's decision. Tanner's motions were improper, and were made after the deadline for completion of discovery and filing of dispositive motions. Because the facts do not support Tanner's excessive-force claim, it is unnecessary to address Valentine's qualified immunity.

AFFIRMED.

7