# United States Court of Appeals
# for the Fifth Circuit

---

No. 21-10396
Summary Calendar

---

United States Court of Appeals
Fifth Circuit

**FILED**
January 13, 2023

Lyle W. Cayce
Clerk

Jessie Bernabe,

*Plaintiff—Appellant*,

*versus*

D. Rosenbaum, *#2639*, officer, *individually and as an agent of* The Arlington Police Department; P. Insixiengmay, *#2632*, officer, *individually and as an agent of* The Arlington Police Department,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:18-CV-580

---

Before Barksdale, Elrod, and Haynes, *Circuit Judges*.

Per Curiam:*

Jessie Bernabe, Texas prisoner # 2144625 and proceeding *pro se*, challenges: the adverse summary judgment, based on qualified immunity, against Corporal D. Rosenbaum and Officer P. Insixiengmay (defendants);

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

and, on two bases, the denial of his motion to compel discovery. (The court had previously entered a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) dismissing, for failure to state a claim, Bernabe's claims against the City of Arlington and his official-capacity claims against the two officers. Bernabe did not appeal that partial final judgment. The qualified-immunity proceedings began after that judgment.)

It is more than well-established that a summary judgment is reviewed *de novo*. *E.g.*, *Hyatt v. Thomas*, 843 F.3d 172, 176 (5th Cir. 2016). Such judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"; and we may affirm on any ground raised in the district court and supported by the record. FED. R. CIV. P. 56(a); *e.g.*, *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020).

In his sworn complaint pursuant to 42 U.S.C. § 1983, Bernabe contends defendants used excessive force when, following a foot-chase, they deployed their Tasers to apprehend him and take him into custody. When an official asserts the affirmative defense of qualified immunity, the burden shifts to plaintiff to negate the defense. *E.g.*, *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020). "[T]he qualified-immunity inquiry has two prongs: (1) whether an official's conduct violated a constitutional [or statutory] right of the plaintiff, *and* (2) whether that right was clearly established at the time of the violation". *Rockwell v. Brown*, 664 F.3d 985, 990–91 (5th Cir. 2011) (emphasis added). In short, both prongs must be satisfied.

For determining whether qualified immunity applies, facts and reasonable inferences are construed in nonmovant's favor. *E.g.*, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Again, both prongs must be satisfied, and courts may choose which prong to consider first. *E.g.*, *id.* at 656. The district court concluded each defendant was entitled to qualified immunity under

both prongs of the analysis.  As discussed *infra*, Bernabe fails to satisfy the first prong.  Therefore, we need not reach the second.

The first prong concerns whether defendants violated Bernabe's Fourth Amendment right to be free from unreasonable seizures by using excessive force against him.  Restated, "[t]he Fourth Amendment prohibits police from using more force than is reasonably necessary to effect an arrest". *Buehler v. Dear*, 27 F.4th 969, 980 (5th Cir. 2022).  To establish excessive force in violation of the Fourth Amendment, plaintiff "must [claim] (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable". *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996) (citation omitted).

That Bernabe sustained an injury as a result of being tased is not disputed.  In determining the objective reasonableness of defendants' actions, we "balance the amount of force used against the need for that force". *Id.* at 434.  Our court considers the use of force "from the perspective of a reasonable officer on the scene" without "the 20/20 vision of hindsight". *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Along that line, the following facts are undisputed.

Corporal Rosenbaum observed Bernabe's driving a vehicle that had been reported stolen; and knew that during the shift prior to his own, a man fitting Bernabe's description and driving that same stolen vehicle eluded another officer following a dangerous high-speed chase.  When Corporal Rosenbaum pulled behind the stolen vehicle, Bernabe parked it in a residential driveway, exited the vehicle, and moved towards the door of the residence.

Corporal Rosenbaum ordered Bernabe to come to him.  Although Bernabe began to move towards him, he abruptly turned and ran away from

him. Corporal Rosenbaum radioed for backup while chasing Bernabe on foot for approximately 200 yards through a dimly lit neighborhood. During the chase, Corporal Rosenbaum ordered Bernabe to stop, but his commands were not heeded.

Officer Insixiengmay intercepted the foot-chase and ordered Bernabe to stop. He continued to run from defendants and climbed through a hole in a chain-link fence. After Officer Insixiengmay and then Corporal Rosenbaum made it through the hole in the fence, both ordered Bernabe to stop. He slowed to a walk but was still moving away from the officers towards a food store.

When he ignored the officers' final command to stop, both fired their Tasers at him. One Taser probe struck Bernabe about the head; the other three made contact with the back of his torso. As a result, he was incapacitated, and then apprehended and arrested.

Based on these undisputed facts, Bernabe cannot show that using a Taser to apprehend him was objectively unreasonable. *E.g.*, *Ikerd*, 101 F.3d at 434; *Salazar v. Molina*, 37 F.4th 278, 282–83 (5th Cir. 2022) ("[A] suspect cannot refuse to surrender and instead lead police on a dangerous hot pursuit—and then turn around, appear to surrender, and receive the same Fourth Amendment protection . . . he would have received had he promptly surrendered in the first place".); *Pratt v. Harris Cnty.*, 822 F.3d 174, 178, 181–82 (5th Cir. 2016) (determining whether force is reasonable requires considering, *inter alia*, whether suspect "is actively resisting arrest or attempting to evade arrest by flight" (citation omitted)). Bernabe claims, however, four factual disputes preclude summary judgment.

First, he contends that, because he had slowed to a walk, the use of Tasers to apprehend him was not necessary. We assume as correct Bernabe's assertion that, by slowing to a walk he was attempting, or

preparing, to surrender. He conceded in district court, however, that he did not immediately comply with the order to stop and that he was still moving away from the officers, without his hands raised, when defendants deployed their Tasers. Given this concession and Bernabe's feigned compliance with Corporal Rosenbaum's initial order, a reasonable officer on the scene could have questioned whether the "suspect's purported surrender [was] a ploy", such that a Taser was necessary to apprehend him. *E.g.*, *Salazar*, 37 F.4th at 282. Any factual dispute with respect to whether Bernabe was attempting to surrender is therefore immaterial.

Second, defendants averred they were the only officers on scene when Bernabe was tased. Bernabe alleged, though, there were at least ten other officers at the scene, making tasing unnecessary to his apprehension. Accepting Bernabe's version of the facts, his continued refusal to comply with commands to stop in the presence of that many officers is all the more concerning, especially where Corporal Rosenbaum knew Bernabe had very recently engaged in dangerous behavior by leading police on a high-speed chase to avoid apprehension. Accordingly, the number of officers on scene is immaterial to whether using a Taser to apprehend Bernabe was objectively reasonable. *E.g.*, *Pratt*, 822 F.3d at 178, 181–82 (holding when individual "aggressively evaded [the officers'] attempts to apprehend him" and "continuously failed to comply", use of Tasers was not "clearly excessive" or "unreasonable").

Third, Bernabe alleged in his sworn complaint that defendants aimed their Tasers at his head, but the officers both asserted they aimed at his torso. Fourth, Bernabe referred to synchronization-history reports regarding both officers' Tasers and alleged Officer Insixiengmay deployed his Taser more than a minute after Corporal Rosenbaum deployed his. Both officers alleged they deployed their Tasers almost simultaneously. These two factual disputes may well be material to determining the reasonableness of the

officers' actions. To preclude summary judgment, however, as discussed above, the dispute over a material fact must be "genuine". Fed. R. Civ. P. 56(a).

Bernabe's allegation the officers aimed for his head, although sworn, was based merely on the following facts: officers were only five-to-eight feet away from him when they deployed their Tasers; and one of the Taser probes was found tangled in his hair. By his own account, Bernabe's back was to the officers when tased. He could not have seen where the officers were aiming; therefore, his conclusional and unsubstantiated allegation about their aim was not competent summary-judgment evidence. *E.g.*, *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("[C]onclusional allegations and unsubstantiated assertions may not be relied on by the nonmoving party".).

Likewise, Bernabe asserted in district court he did not remember the tasing because he was knocked out instantly. His allegation that more than a minute passed between the officers' Taser deployments is based on his own interpretation of the synchronization reports later conducted on the two deployed Tasers. The officers supported their allegations that they fired almost simultaneously with: sworn affidavits based on their own personal knowledge; the same Taser synchronization reports relied upon by Bernabe; and sworn affidavit testimony from the police department's primary Taser instructor, explaining how the Tasers' internal clocks work and interpreting the Taser synchronization reports as confirming that Officer Insixiengmay deployed his Taser only one second after Corporal Rosenbaum deployed his.

Therefore, Bernabe failed to show a genuine dispute regarding these two matters. *E.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Accordingly, there were no genuine disputes of material fact precluding summary judgment. *E.g.*, Fed. R. Civ. P. 56(a).

Based on the summary-judgment record at hand, defendants are entitled to qualified immunity against Bernabe's Fourth Amendment claims because, for the first prong of the two-part analysis for such immunity, defendants did not use more force than was reasonably necessary to apprehend and arrest him. *E.g.*, *Buehler*, 27 F.4th at 980; *Rockwell*, 664 F.3d at 990–91. Again, his having failed to satisfy the first prong, it is not necessary to reach the second (whether right was clearly established).

We turn to whether Bernabe's procedural challenges pertaining to the summary-judgment record preclude summary judgment. He contests: the court's conclusion that defendants timely objected to his request for documents; and its denial of his motion to compel discovery. In support, he contends: defendants' objections were untimely, and therefore waived, because they were filed 33 days after he mailed his requests; and the court erred in denying his motion to compel defendants to produce emergency personnel services reports, documents on department policies, and physical evidence.

"A district court's discovery ruling is reviewed for abuse of discretion." *Angus Chem. Co. v. Glendora Plantation, Inc.*, 782 F.3d 175, 179 (5th Cir. 2015). Under that standard, our court will reverse discovery rulings "only where they are arbitrary or clearly unreasonable". *Id.* (citation omitted). Underlying factual findings are reviewed only for clear error. *E.g.*, *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985). A factual finding is clearly erroneous only if "the reviewing court[,] on [considering] the entire evidence[,] is left with the definite and firm conviction that a mistake has been committed". *Id.* at 573 (citation omitted).

Because Bernabe mailed his discovery requests on or about 26 December 2019; and because defendants responded on 28 January 2020, the court did not clearly err in finding defendants' response was mailed 33 days after service and was timely. *E.g.*, FED. R. CIV. P. 5(b)(2)(C) (stating service of document complete when document mailed); FED. R. CIV. P. 6(d) (adding 3 days to period required for action (in this instance, 30 days, pursuant to Rule 34 (b)(2)(A)) when service made by mail).

Further, because defendants had already provided some discovery to Bernabe and offered evidence in support of their motions, and Bernabe's challenge is grounded in immaterial or non-genuine disputes, he failed to show there was a need for further factual development to determine qualified immunity *vel non*. The court did not err in declining to defer the issue of qualified immunity to allow further discovery. *E.g.*, *Zapata v.* Melson, 750 F.3d 481, 485 (5th Cir. 2014) (explaining when plaintiff pleads "facts which, if true, would overcome the defense of qualified immunity", if district court "unable to rule on the immunity defense without further clarification of the facts", it may defer its ruling on qualified immunity and issue a narrow discovery order to clarify necessary facts (citation omitted)). Accordingly, the court did not abuse its discretion in denying Bernabe's motion to compel discovery or in doing so before determining the qualified-immunity issue. *E.g.*, *Angus Chem. Co.*, 782 F.3d at 179.

AFFIRMED.