# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 16, 2023

Lyle W. Cayce
Clerk

———————

No. 23-20054

———————

Donna McNeal,

*Plaintiff—Appellant*,

*versus*

City of Katy; J. Noe Diaz; Officer Rucker; Officer Garcia; Officer Domer; Officer Snowden; Officer Reyna; Officer Wiley; Officer Alvarez,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1163

———————————————————————

Before Jones, Barksdale, and Elrod, *Circuit Judges*.

Per Curiam:[*]

Plaintiff Donna McNeal appeals the district court's grant of summary judgment to Officers Domer and Garcia, arguing that the district court improperly granted the officers qualified immunity. She further appeals the district court's grant of summary judgment in favor of Police Chief Diaz and the City of Katy on her § 1983 claims against those defendants. Because we hold

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

that (1) Domer and Garcia are entitled to qualified immunity, (2) McNeal has forfeited her claims against Chief Diaz, and (3) McNeal has failed to establish a genuine dispute as to any material fact concerning her *Monell* claim against the City, we AFFIRM.

I

Because video evidence is available in this case, we are required to "view the facts in the light depicted by the videotape." *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (alteration adopted) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). Inasmuch as that video evidence is inconclusive, however, the ordinary summary judgment standard applies. *Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021). Thus, the following facts are recounted as depicted by the footage captured by Officer Domer and Officer Garcia's body cameras. To the extent the video evidence is inconclusive, the disputed facts have been recounted—as they must be at summary judgment—in the light most favorable to McNeal. *Id.*

A

On March 16, 2019, Officers Garcia and Domer separately responded to a call concerning a disturbance at Los Cucos Mexican Restaurant in Katy, Texas. Garcia and Domer pursued two vehicles containing individuals involved in the disturbance. Upon locating the vehicles, observing two individuals acting suspiciously, and smelling marijuana, Garcia and Domer detained those two people.

During this detention, Garcia began communicating with Donna McNeal, who was standing nearby, between the open driver's door and the driver's seat of a parked white SUV while another individual sat in the driver's seat. The SUV was parked perpendicular to a second vehicle, a red sedan, with the SUV driver's side door adjacent to the sedan's right rear bumper. Owing to the relative position of the vehicles, the encounter took

place in close quarters.  During the confrontation, McNeal, in a raised tone, stated "You better leave me the f—alone.  Leave me alone.  You don't know nothing about me."

Officer Garcia repeatedly asked McNeal to calm down, to which she replied, "I don't have to calm down."  McNeal repeatedly yelled at Garcia, demanding that he not touch her.  Garcia also implored McNeal to not "turn this into a bigger problem."  Subsequently, Garcia calmly asked McNeal multiple times if she was at Los Cucos.  Garcia then reframed the question, asking what was "going on at Los Cucos."  McNeal responded, beckoning and looking at someone off-camera, "that motherf— tried to make us pay for s— we didn't get."  McNeal, Garcia, and the unnamed driver then spoke over one another, though McNeal can be heard stating, repeatedly, that she was not "with them"—presumably referencing the other individuals detained—and thus Garcia "ha[d] no business talking to [her]."

After McNeal reiterated her demand that Garcia not "talk" to her, she slowly began to turn away from Garcia and towards the driver, who was sitting mere inches from her.  In response, Garcia reached out and grabbed McNeal's right forearm and attempted to place handcuffs on her.  McNeal intercepted the handcuffs, holding them in her right hand, and tried to wriggle her arm free, though Garcia appears to have pulled her closer to his person.  McNeal alleges that at this point, "Garcia grabbed Ms. McNeal and threw her to the ground."  While Appellees argue that McNeal fell on her own accord, the video footage is not conclusive on this point.  Thus, for the purposes of summary judgment review, we presume that Garcia threw McNeal to the ground, causing her to hit her head on the sedan's bumper before her elbow broke her fall on the ground.  As Garcia grabbed at McNeal, Domer—who to this point had stood at the back of the SUV detaining another individual—lurched towards McNeal with his arm out, seemingly

trying to break her fall.  Upon impact, McNeal exclaimed "Oh sh—!"  Once on the ground, McNeal reached for her head and yelled "Oh my G—!"

With McNeal on the ground, Domer tried to grab her wrists, place her arms behind her back, and handcuff her.  As McNeal again resisted being handcuffed by flexing her biceps and preventing her arms from being placed behind her, Domer took both of McNeal's arms over her head, dragging her on the ground toward the back of the SUV.  Once she was clear of the car, Domer stopped dragging her and again attempted to handcuff her.  In response, McNeal did not resist, stating only that she would "put [her arms] back" behind her and imploring Domer to not "squish" or twist her arms.  With McNeal face-down on the ground, Domer secured her by handcuffing her with her arms behind her, then helping her off the ground.

Now on her feet, McNeal again disavowed a relationship with the individuals detained and yelled at the officers not to touch her.  Garcia then escorted McNeal to the back of his police cruiser.  After speaking with McNeal—who declined Garcia's offer to secure medical assistance—other detained individuals, officers on the scene, and members of McNeal's family over the course of several minutes, Garcia released McNeal. No charges were filed against McNeal.

B

McNeal filed suit under 42 U.S.C. § 1983 in state court, asserting violations of her Fourth, Fourteenth, and Eighth Amendment rights against Katy Police Chief J. Noe Diaz; Katy Police Officers Rucker, Garcia, Domer, Snowden, Reyna, Wiley, and Alvarez; and the City of Katy.  Appellees removed the action to federal court the following month.  Chief Diaz and the

No. 23-20054

City of Katy jointly filed for summary judgment, as did the Officers. The district court granted summary judgment on all claims.[1]

## II

"This court reviews a grant of a motion for summary judgment *de novo*, and applies the same standard as the district court, viewing the evidence in the light most favorable to the nonmovant." *Clark v. Dep't of Pub. Safety*, 63 F.4th 466, 469 (5th Cir. 2023) (citation omitted) (italics added). Because video evidence is available, we are required to "view the facts in the light depicted by the videotape." *Salazar*, 37 F.4th at 280 (alteration adopted) (quoting *Scott*, 550 U.S. at 381). Inasmuch as that video evidence is inconclusive, however, the ordinary summary judgment standard applies. *Aguirre*, 995 F.3d at 410. Ultimately, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III

On appeal, McNeal expressly waives all claims against Officers Snowden, Reyna, Wiley, and Alvarez, appealing only claims against Chief Diaz, Officers Domer and Garcia, and the City of Katy. Likewise, while McNeal does not expressly waive claims raised under the Eighth and Fourteenth Amendments, she fails to mention them, much less brief them, which forfeits those claims. *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 489 n.1 (5th Cir. 2018) (concluding that failure to adequately brief a claim on appeal forfeits it). Thus, we focus on McNeal's claims against Diaz, Domer, Garcia, and the City.

---

[1] The parties consented to trial before a magistrate judge.

A

McNeal appeals the district court's grant of qualified immunity to Domer and Garcia. We affirm, because the officer's actions did not violate clearly established law.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted). "Qualified immunity includes two inquiries. The first question is whether the officer violated a statutory or constitutional right. The second question is whether the right at issue was clearly established at the time of the alleged misconduct." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (alteration adopted) (quotation marks omitted) (quoting *Pearson*, 555 U.S. at 232).

"To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citation omitted). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, a reasonable amount of force may be used to detain a subject even if that subject is not being arrested.

To "gauge the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force[,]" paying "careful attention to the facts and circumstances of each particular case." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir.

2004) (alteration adopted) (citation and quotation marks omitted).  The Supreme Court's decision in *Graham v. Connor* guides the reasonableness inquiry, pointing us to several factors: "[T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  490 U.S. at 396.

McNeal argues that Officers Garcia and Domer both used excessive force in violation of clearly established law during their interaction with her. First, she argues that Officer Garcia used excessive force when he "intentionally grabbed and jerked Ms. McNeal towards the vehicle, causing her head to strike against a car."  Further, she argues that Officer Domer used excessive force when he dragged her by both arms out from between the two vehicles.  Specifically, McNeal argues that both uses of force were unconstitutional because any use of force would have been unconstitutional in these circumstances because "there was no filed criminal complaint" and McNeal was not under arrest.

None of McNeal's cited cases establish, much less clearly establish, that the officers used excessive force.  Citing *Ware v. Reed*, 709 F.2d 345 (5th Cir. 1983), she argues that "the use of nearly any amount of force may result in a constitutional violation when a suspect 'poses no threat to [the officers'] safety or that of others, and [the suspect] does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified.'"  She also cites *Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996), for the proposition that a constitutional violation occurs where the amount of force used is more than necessary.  In *Ikerd*, the Court held that a reasonable jury could conclude that an officer who violently jerked a ten-year-old child out of her living room chair and dragged her across a room used excessive force when the officer came into the home to arrest the child's father.  *Id.* These cases fall short of clearly establishing that Officers Domer and Garcia

used excessive force when detaining McNeal. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (instructing courts not to "define clearly established law at a high level of generality").

Indeed, this Court's precedent forecloses McNeal's argument. Consider, for example, *Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022), in which our Court recently concluded that qualified immunity applied in similar circumstances. There, this Court held that it was not objectively unreasonable for officers to restrain an individual's arms and force her to the ground in a "takedown" maneuver to handcuff her because the individual was belligerent prior to her arrest for public intoxication and resisted arrest—albeit mildly—by struggling against the officers as they tried to grab her arms. *Id.* at 983. While the Court acknowledged that the individual "did not pose an immediate threat to the safety of the officers or others," it reasoned that the officers' action could still be perceived as reasonable. *Id.* at 981–83. Accordingly, the Court held that "even viewing the facts in the light most favorable to Solis, we cannot say that the officers violated her constitutional right to be free from excessive force." *Id.* at 983.

*Solis* and other similar precedents support the district court's determination that the force Garcia and Domer deployed in this case did not clearly violate McNeal's Fourth Amendment rights. *See, e.g.*, *Craig v. Martin*, 49 F.4th 404, 411 (5th Cir. 2022) (holding "it was not objectively unreasonable" for an officer to "push[] [an arrestee] to the ground while maintaining a hold on [his] left arm and releasing it as she slowly descends to the ground" following the arrestee's vocal but non-physical belligerence). Moreover, upon review of both officers' body camera footage, we conclude that no reasonable juror could conclude that either officer deployed excessive force against McNeal. *Scott*, 550 U.S. at 381.

## B

McNeal also appeals the dismissal of her claims against Chief Diaz. We affirm, as McNeal forfeited her claim.

In her opening brief, as Appellees note, McNeal fails to make an argument regarding Chief Diaz's liability. Rather, McNeal only scantly references Chief Diaz in the Statement of Facts, noting that he had a duty to investigate the incident, did so, was new to the Katy Police Department, and later promoted Domer. In reply, McNeal attempts to remedy her oversight, arguing that Diaz had "the authority to retrain, discipline, or ratify the actions of Officers Garcia and Domer" but failed to do so, thus ratifying their allegedly illegal conduct and giving rise to liability. This effort is too little too late. "An appellant abandons all issues not raised and argued in its *initial* brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) (emphasis in original).

## C

Finally, McNeal appeals the district court's grant of summary judgment against the City of Katy.

Under the Supreme Court's decision in *Monell*, "[m]unicipalities can be held liable for violating a person's constitutional rights under § 1983." *Est. of Bonilla by & through Bonilla v. Orange County*, 982 F.3d 298, 308 (5th Cir. 2020) (citation omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). We need not discuss *Monell*'s elements let alone whether McNeal established them, however: "without a predicate constitutional violation, there can be no *Monell* liability." *Loftin v. City of Prentiss*, 33 F.4th 774, 783 (5th Cir. 2022) (citing *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020)). Because we hold that McNeal has failed to establish any constitutional violation, "the associated *Monell* claims must also fail." *Id.*

No. 23-20054

\*       \*       \*

We AFFIRM.